UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY DAVIS,

       Plaintiff,                              Civil Action No. 10-14397

       v.                                     District Judge Avern Cohn
                                             Magistrate Judge Laurie J. Michelson
STRAUB, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [10, 16, 24]**

Plaintiff Perry Davis, an MDOC inmate proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that eight MDOC employees, Dennis Straub, Steven Rivard, Rose Spence, Blaine Lafler, Julius Mayfield, Darlene Lance, Richard Stapleton, and James Armstrong ("Defendants"), violated his First Amendment right to free speech by retaliating against him for reporting Defendant Spence's alleged abuse of authority. All pretrial matters have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkts. 6, 20.) Presently before the Court are Defendants' Motions for Summary Judgment, (Dkts. 10, 16, 24).[1]

For the following reasons, this Court RECOMMENDS that Defendants' Motions for Summary Judgment be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

---

[1] All Defendants have waived service and filed a motion for summary judgment.

**I. BACKGROUND**

From July 16, 2003, to August 8, 2005, Plaintiff was incarcerated at the St. Louis Correctional Facility, in St. Louis, Michigan. ("SLF"). (Dkt. 10, Defs.' Mot. Summ. J., Ex. 3.) While at SLF, Plaintiff worked as SLF's Director of Food Services "Clerk," which "is a very prestigious position for a prisoner." (Compl. ¶ 5.)

Plaintiff asserts that on July 5, 2005, Defendant Spence, a corrections officer, entered the food commissary to find three inmates tossing 100 pound bags of potatoes (and other foods) "from one to the other, enjoying the workout." (Compl. ¶ 8.) Despite that Spence herself allegedly had participated in similar conduct on prior occasions, she yelled at the inmates to stop, and then "laid" them in from work for the remainder of the day (resulting in lost pay to the inmates). (Compl. ¶ 26.) Plaintiff went to a Food Services supervisor about the incident, but Spence overheard the conversation and "in a fit of temper [l]aid Plaintiff in too." (Compl. ¶ 27.)

The next day, July 6, 2005, Plaintiff informed the SLF Food Services Deputy Director, non-party A. Johnson, about what had happened the prior morning. (Compl. ¶¶ 7, 28.) Apparently, Plaintiff believed that Spence, who Plaintiff alleges had limited duties in the Food Services building, had abused or exceeded her position of authority in terminating the inmates' work. (*See* Compl. ¶¶ 6, 21.) Johnson allegedly responded by telling Plaintiff that he should write up the incident with copies delivered to the shift captain or the supervising control center shift lieutenant. (Compl. ¶ 7.) Plaintiff asserts he complied with the request, but also sent letters to Defendant Straub (Deputy Director of MDOC), Defendant Lafler (SLF Warden), and Defendant Rivard (SLF Deputy Warden). (Compl. ¶ 7; *see also id.* ¶¶ 14-16.)

The next morning, a prison lieutenant came to Food Services with "a paper" in his hand, and

took Spence into an office to have a private conversation. (Compl. ¶ 29.) A few minutes after that meeting, one of the prisoners whom Spence had punished warned Plaintiff that Spence was "boiling mad" and that she was "talking about setting you up so you better be real careful." (Compl. ¶ 29.) Plaintiff immediately went to the Food Service Director's office, but no one was available at the time. (Compl. ¶ 30.) On his way back to the commissary, Spence allegedly confronted Plaintiff. (Compl. ¶ 30.) Plaintiff alleges that Spence prevented him from passing and said in a "low and very threatening tone" that "'You're DEAD and you just aren't smart enough to realize it. But You'll figure it out real quick, but by then, it will be way too late for you. Now get the F!?K out of my face you snitch'en cry baby.'" (Compl. ¶ 30.) Plaintiff further alleges that a few minutes later, Spence called the yard officers "to tell them she feared [that Plaintiff] had a knife." (Compl. ¶ 30.) The yard sergeant and several officers then arrived at the commissary to take Plaintiff to segregation. (Compl. ¶ 30.)

Later, correctional officers in segregation "claimed that they found a piece of paper wrapped and folded with scotch-tape around a razor-blade." (Dkt. 12, Pl.'s Resp., Davis Aff. at 3.) Plaintiff received a major misconduct ticket, was removed from his Food Services clerk position, and kept in segregation. (Compl. ¶ 31, Davis Aff. at 3.) An administrative hearing was held on July 21, 2005 and Plaintiff was found guilty. (*Id.*) Plaintiff appealed that misconduct finding and the case was dismissed. (*Id.*; Compl. at 12.) It is unclear when the charges were dropped, but it was at least by December 13, 2006, when Plaintiff made an attempt to recover back-pay. (*See* Compl. at 12-13 (Step I grievance form mentioning that misconduct charges had been "[l]awfully over-turned").)

On December 20, 2006, Plaintiff completed a Step I grievance form against multiple persons including Defendants Straub, Lafler, Rivard, Lance, and Spence. (Compl. at 12.) Plaintiff asserts

3

that he had "now" received official notice that Defendant Stapleton had ordered the major misconduct of dangerous contraband dismissed, "in an attempt to protect [Caruso and Lafler] from public charges of conspiracy to over-look [s]taff [c]orruption." (Compl. at 12.) Plaintiff sought back-pay from July 7, 2005 through November 9, 2006 in the amount of $1,625.94. (*Id.*) It is unclear when Plaintiff actually submitted the completed grievance form; the form only provides that it was "received" on January 23, 2007. (*Id.*) At least part of the delay appears to be attributable to the fact that Plaintiff was residing at another facility at the time he completed the grievance. (*See id.*) Plaintiff completed a Step II appeal form on February 26, 2007, and a Step II response from Defendant Lafler was returned to Plaintiff on April 5, 2007. (Compl. at 13.) Plaintiff appealed to Step III on April 14, 2007, and received a Step III response approved by Defendant Armstrong on October 31, 2007. (Compl. at 14.) The response provides that under MDOC Policy Directive 05.02.100, Plaintiff was entitled to back-pay after his misconduct charge was reversed "for any time s/he was removed from the assignment pending the initial hearing." (*Id.*) Because Plaintiff was repaid for this time period—July 7, 2005 to July 21, 2005—the Step III appeal for additional back-pay was denied. (*Id.*)

Years after the grievance process completed, on October 22, 2010, Plaintiff filed this suit asserting that Spence fabricated evidence in retaliation for Plaintiff circulating the June 6, 2005 letters. (Compl. ¶ 12.) As a result of that retaliation, Plaintiff asserts that he was (1) wrongfully segregated, (2) lost his Director of Food Services Clerk position (and corresponding pay), and (3) was transferred "several hundred miles north" to Michigan's upper peninsula. (Compl. ¶ 31.) Plaintiff seeks punitive and compensatory damages totaling over $30,000.

## II. ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

#### 2. Sua Sponte Dismissal for Failure to State a Claim

Plaintiff is a prisoner proceeding *in forma pauperis*. Thus, under 28 U.S.C. § 1915(e)(2) this

Court may *sua sponte* dismiss Plaintiff's Complaint if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Where, as here, a plaintiff is proceeding without the assistance of counsel, the Court liberally construes the complaint and holds Plaintiff to less stringent pleading standards than those imposed upon an attorney. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Even so, pro se complaints must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and must also "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability," it has failed to show that relief is plausible as opposed to a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).

### B. The Court Should Sua Sponte Dismiss Defendants Straub, Lafler, Rivard, Stapleton, Armstrong, Mayfield, and Lance For Failure to State a Claim Upon Which Relief May Be Granted

The allegations in Plaintiff's Complaint, and those in his summary judgment responses, do not adequately indicate how any of the Defendants other than Spence could be liable for the alleged retaliatory misconduct charge. As for Defendants Straub (MDOC Deputy Director), Lafler (SLF Warden), and Rivard (SLF Deputy Warden), Plaintiff asserts that he sent letters and kites to these three Defendants requesting that they investigate the misconduct charge brought by Spence. (Compl. ¶ 12.) In his Response, Plaintiff explains that "[a]fter being notified of the planting of Dangerous Contraband by Defendant Spence, and her involvement in the writing of the false

misconduct charge, Defendant Straub failed to act." (Dkt. 12, Pl.'s Resp. at 11.) Similarly, he asserts that "the record is . . . clear that the extent of Defendant Rivard['s] involvement in this action is limited to his receipt of the Plaintiff['s] many complaints against Defendant Rose Spence." (Pl.'s Resp. at 14.)

Supervisory liability under § 1983 "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Supervisors are not liable under § 1983 merely because they are aware of an alleged violation and fail to act—this holds even if the omission is the "failure [to] remedy the ongoing effects of a constitutional violation." *King v. Zamiara*, No. 4:02-cv-141, 2009 WL 1067317, at *2 (W.D. Mich. Apr. 21, 2009) (citing *Shehee*, F.3d at 300); *see also Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ("[Plaintiff] merely alleged that [the MDOC director] failed to remedy the situation after he had been informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Seaton v. Sova*, No. 1:08-cv-1131, 2009 WL 2132728, at *9 (W.D. Mich. July 10, 2009) ("[Section] 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.").

Given the foregoing authority, Defendants Straub, Lafler, and Rivard should be dismissed for lack of personal involvement. Plaintiff has alleged that they failed to remedy the false misconduct charge brought by Spence. But that is all that he has asserted; Plaintiff's Complaint (and summary judgment briefing) fail to allege how these three Defendants "approved[] or knowingly acquiesced in [Spence's] unconstitutional conduct." *See Shehee*, 199 F.3d at 300 (distinguishing

between an allegation that defendants were aware of the retaliatory acts and failed to remedy them, and an allegation "that . . . defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts against [plaintiff]").

The Court also finds that the Complaint fails to state a claim against Defendants Stapleton (MDOC Policy and Hearings Administrator), Lance (Assistant Business Manager with Food Services oversight responsibility), Mayfield (Director of Classification at SLF who resolves payroll disputes), and Armstrong (MDOC Grievance Administrator). As for Defendants Stapleton and Lance, Plaintiff describes their positions within MDOC in his Complaint and details their job duties, but asserts nothing else. The Complaint makes no allegations about how Stapleton and Lance were involved in retaliating against Plaintiff or otherwise violated his Constitutional rights. As for Mayfield and Armstrong, the Complaint is similarly deficient. Even looking to the attachments to the Complaint, the Court can only infer that the former responded to Plaintiff's Step I grievance, and the latter approved MDOC's Step III grievance response. (Compl. at 12, 14.) Therefore, it appears that Plaintiff's claim is that Mayfield and Armstrong failed to remedy the constitutional wrong caused by Spence; this claim fails for the same reasons it fails against Defendants Straub, Lafler, and Rivard. *See Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Alder v. Corr. Medical Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension.").

### C. Plaintiff's Retaliation Claim Is Barred By The Statute of Limitations

The gravamen of Defendants' Motions is that Plaintiff's Complaint is time-barred by the

applicable statute of limitations. (Dkt. 10, Defs.' Mot. Summ. J. at 3-4.) In essence, Defendants assert that more than five years have elapsed between the time Plaintiff's First Amendment claim accrued on July 7, 2005, and when Plaintiff filed this suit on October 22, 2010, and thus, even accounting for tolling during the prison grievance process, his Complaint is untimely by a wide margin. (*Id.*) Plaintiff responds by arguing that the statute of limitations clock did not start until after he completed the grievance process on October 31, 2007, and, accordingly, his October 22, 2010 Complaint is timely filed by nine days. (Dkt. 12, Pl.'s Resp. at 5.)

Because the statute of limitations is an affirmative defense, Defendants raising that shield have the burden of proof. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). To prevail, Defendants must show: (1) that the statute of limitations has run, and (2) that no genuine issue of material fact exists as to when plaintiff's cause of action accrued. *Id.* If defendants carry their burden, the burden shifts to Plaintiff to establish an exception to the statute of limitations. *Id.*

The relevant statute, 42 U.S.C. § 1983, does not itself set a statute of limitations period. Rather, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008); *see also Owens v. Okure*, 488 U.S. 235, 240-41 (1989). For a § 1983 action arising in Michigan, such as this case, Michigan's three-year statute of limitations period for personal injury claims governs. *Id.* (citing Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004)).

In determining when the limitations period starts, however, courts look to federal law. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). More specifically, the Sixth Circuit has held that the clock starts "'when the plaintiff knows or has reason to know of the injury which is the

9

basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Id.* (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). The Court "exclude[s] the day of the event that triggers the period" when calculating the statute of limitations. *See* Fed. R. Civ. P. 6(a)(1)(A).

Regarding the start of the relevant timeline, the Court agrees with Defendants that Plaintiff's cause of action accrued on July 7, 2005. At that time, Plaintiff had the requisite facts to sufficiently plead a retaliation claim: (1) Plaintiff had allegedly exercised his First Amendment right to free speech by writing letters about Spence's disciplinary action against inmates working in the commissary, (2) soon thereafter, Plaintiff was placed in segregation and charged with major misconduct for having a knife or razor-blade, and (3) Spence allegedly caused these events to happen because she was upset with Plaintiff's letter writing. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) ("A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.").

Regarding the other end of the timeline, the Court agrees with Plaintiff. Plaintiff correctly asserts that under the "prison mailbox rule," he filed his Complaint on the date he delivered it to prison staff: October 22, 2010. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("The defendants' focus on the court's date stamp overlooks the 'prison mailbox rule.' Under this relaxed filing standard, a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. . . . Cases expand the understanding of this handing-over rule with

an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint."). Defendants rely on *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) for the proposition that Plaintiff only filed his Complaint when the Court granted *in forma pauperis* status. (Dkt. 10, Def.'s Mot. at 3-4.) However, the plaintiff in *Truitt* was not a prisoner, and, moreover, in a subsequent case the Sixth Circuit held, "[u]nder [our precedents], the complaint of a pro se petitioner who applies for permission to proceed IFP is deemed 'filed' for statute of limitations purposes when the petitioner deposits both the complaint and the application to proceed IFP in the prison mail system to be forwarded to the court clerk." *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004). In this case, Plaintiff signed his Complaint on October 22, 2010. He also signed the affidavit accompanying his IFP application on October 22, 2010. The Court has no reason to believe that Plaintiff did not file his Complaint and IFP application with the prison on that date, and, drawing all reasonable inferences in Plaintiff's favor, finds that Plaintiff filed his Complaint on October 22, 2010.

Thus, the statute of limitations began to run on July 8, 2005, and Plaintiff filed suit on October 22, 2010. As this time-span is plainly greater than the three-year limitations period applicable to Plaintiff's section 1983 claim, the remaining question is whether tolling renders Plaintiff's claim timely.

### 1. The Statute of Limitations Clock Tolled During the Grievance Period

The Sixth Circuit has held that the statute-of-limitations clock applicable to a prisoner-initiated § 1983 suit tolls while the plaintiff exhausts available state administrative remedies. *Waters v. Evans*, 105 F. App'x 827, 829 (6th Cir. 2004); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Defendants assert that because MDOC's Policy Directive governing grievances

11

provides that the grievance process will "generally be completed within 120 calendar days," that is the maximum amount of tolling Plaintiff should be accorded. (Dkt. 14, Defs.' Reply to Pl.'s Resp. to Defs.' Mot. Summ. J. at 3.) This argument has been previously rejected by a court of this district because it is contrary to sound policy: if a grievance did not toll the limitations clock during the entire grievance process, the prison, upon receiving a grievance could, through its own dilatory practices, wait out the limitations period. *See Vartinelli v. Pramstaller*, No. 10-10702, 2010 WL 5330484, at *2 (E.D. Mich. Dec. 21, 2010); *Pramstaller*, 2010 WL 5330487, at *3 (E.D. Mich. Dec. 1, 2010) (report and recommendation) (declining to follow *Threatt v. Olger*, No. 2:10-cv-13, 2010 WL 1848515, *5 (W.D. Mich. May 7, 2010) and *Brandon v. Bergh*, No. 2:09-cv-179, 2009 WL 4646954, *3 (W.D. Mich. Dec. 8, 2009) which capped tolling in accordance time set in MDOC policy directive).

In this case, it is unclear when Plaintiff "filed" his Step I grievance. It is clear that he completed the Step I grievance form on December 20, 2006, and that SLF did not receive a copy of that form until January 23, 2007. (Compl. at 12; *see also* Dkt. 12, Pls.' Resp. to Defs.' Mot. Summ. J. at 5.) Construing all ambiguous facts in the light most favorable to Plaintiff, however, the Court accepts December 20, 2006 as the applicable tolling date. Plaintiff's Step III grievance response was approved on October 31, 2007, and Plaintiff appears to concede that the statute-of-limitations clock restarted after that. (*See* Dkt. 12, Pl.'s Resp. to Defs.' Summ. J. Mot. at 5.) Accordingly, due to the prison grievance process, Plaintiff is entitled to 316 days of tolling.[2]

---

[2] The fact that the statute of limitations *tolls* during the grievance process does not mean, as Plaintiff suggests, that the clock does not *start* until after the grievance process has been exhausted. By delaying the filing of a grievance, a prisoner not only runs the risk that the grievance will be rejected by the prison as untimely, but also that a subsequent § 1983 lawsuit could be time barred under the applicable statute of limitations.

12

Accordingly, because the statute of limitations clock began to run on July 8, 2005, Plaintiff had until 316 days after July 8, 2008 to file suit: May 20, 2009. But Plaintiff did not file suit until October 22, 2010—almost a year-and-a-half too late. Thus, absent further tolling, Plaintiff's Complaint is time barred.

### 2. Plaintiff Should Not Be Accorded Additional Time to File Suit Pursuant to Heck v. Humphrey

Although not argued by Plaintiff nor addressed by Defendants, the Court has considered the delayed-accrual rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), but finds that it does not lift the limitations bar in this case. In *Heck*, the Supreme Court held that "in order to recover damages . . . for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Subsequently, the Supreme Court has explained, "[our precedents,] taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Further, the *Heck* accrual rule may apply where a prisoner loses good-time credits affecting the duration of a prisoner's sentence. *See Edwards v. Balisok*, 520 U.S. 641, 646, 648 (1997); *Caldwell v. Avery*, No. 1:05-CV-745, 2005 WL 3262436 (W.D. Mich. Nov. 30, 2005) (dismissing First Amendment retaliation claim under *Heck* where Plaintiff requested damages because "[u]nder Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction."

13

(citing Mich. Comp. Laws § 800.33)). In short, a plaintiff cannot bring a § 1983 action—the action is either barred or has not accrued—if success on the merits would impact the duration of his sentence unless and until his "conviction" is reversed/overturned in some manner.

Here, success on Plaintiff's § 1983 claim requires showing that Spence fabricated Plaintiff's possession of a razorblade in retaliation for Plaintiff's letter writing. Such a finding would have indirectly attacked the one-time existent guilty finding: the major misconduct charge against Plaintiff was for possession of "dangerous contraband." (Compl. at 12.) It is conceivable, then, that the statute-of-limitations clock might not have run after Plaintiff was found guilty of misconduct but before the charges were dismissed on appeal. *See Wallace v. Kato*, 549 U.S. 384, 394-95 (2007) (finding plaintiff's §1983 unlawful arrest claim accrued after adequate process given to plaintiff despite that criminal charges were then pending, but acknowledging that plaintiff may be accorded additional time to file § 1983 action under state-law equitable tolling where *Heck*-bar comes into existence after state court conviction).

On this record, however, the Court does not believe there is a basis for delaying the accrual of Plaintiff's claim. *Heck* applies where success on a § 1983 claim "necessarily demonstrate[s] the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 82. In this case, however, Plaintiff has been found guilty of first-degree murder, Mich. Comp. Laws § 750.316. (Dkt. 10, Defs.' Mot. Summ. J., Ex. 1.) Public records pertaining to his sentence indicate that his minimum sentence is "life" and his maximum sentence is "life." (*Id.*) Indeed, first-degree murder carries a mandatory sentence of life without parole. Mich. Comp. Laws § 791.234(6)(a) ("A prisoner sentenced to imprisonment for life for [first degree murder in violation of section 316 of the Michigan penal code] is not eligible for parole . . . ."); *People v. Bellman*, No. 250930, 2005 WL 698142, at *2 (Mich. Ct.

App. Mar. 15, 2005) ("[W]e observe that the sentence for first-degree murder is mandatory life imprisonment without parole. The court has no discretion in the matter."). As such, without the benefit of any argument from Plaintiff on this issue, the Court fails to see how being found guilty of major misconduct could have altered the duration of Plaintiff's sentence.

Moreover, even if the Court is mistaken about its assumption that the misconduct finding would not have barred a § 1983 suit under *Heck* until the misconduct was dismissed, any delayed-accrual would still be insufficient to lift the statute-of-limitations bar. Although stated in the context of a Fourth Amendment unlawful arrest claim, the Supreme Court has suggested that *Heck* does not bar a § 1983 claim prior to a conviction, or in this case, a guilty-of-misconduct finding. *Wallace*, 549 U.S. at 393 ("What petitioner seeks . . . is the adoption of a principle that goes well beyond *Heck*: that an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. . . . We are not disposed to embrace this bizarre extension of *Heck*."). The Sixth Circuit has similarly stated:

> In *Wallace*, the court specifically held that *Heck* is not to be extended into the pre-conviction arena. The *Wallace* court recognized that deferred-accrual reasoning was unnecessary and inappropriate in the pre-conviction setting because the common abstention practice of staying the § 1983 action would afford adequate protection to the plaintiff. . . . [I]rrespective of the difference between types of § 1983 claims asserted, the rule of *Heck* cannot be divorced from its post-conviction setting. This is the teaching of *Wallace*.

*Eidson v. Tenn. Dept. of Children's Servs.*, 510 F.3d 631, 640 (6th Cir. 2007) (internal citation omitted). Plaintiff's initial misconduct hearing was held on July 21, 2005: 13 days after the statute-of-limitations began to run on July 8, 2005. (Compl. at 14.) Sometime thereafter, Plaintiff was found guilty of misconduct. (Dkt. 12, Pl.'s Resp., Davis Aff. at 3.) Thus, even assuming *Heck*'s delayed-accrual rule somehow applies, at least 13 days ran off the statute-of-limitations clock prior

to any misconduct finding. Granting Plaintiff additional filing time to account for the period after that finding through the Step III grievance appeal response on October 31, 2007, Plaintiff had at latest until October 31, 2010 less 13 days to file suit, i.e., until October 18, 2010.[3] Plaintiff, however, did not file suit until October 22, 2010, and, therefore, even assuming the applicability of *Heck*, Plaintiff's suit is untimely.

### *3. Plaintiff Has Provided No Other Reasons for Equitably Tolling His Suit*

The Sixth Circuit has provided the following non-exhaustive list of factors for this Court to consider when determining the appropriateness of equitably tolling the statute of limitations: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truitt v. County of Wayne*, 148 F.3d 644, (6th Cir. 1998). "Equitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). And the burden to establish equitable tolling rests upon Plaintiff. *See Hampton v. Caldera*, 58 F. App'x 158, 160 (6th Cir. 2003).

Even overlooking the almost year-and-half that elapsed prior to Plaintiff filing the grievance related to this suit, it remains that Plaintiff waited just shy of three years after MDOC responded to his Step III grievance appeal before filing suit. He provides no explanation for waiting to file suit until nearly three years after his claims were administratively exhausted. To the extent that Plaintiff was knowledgeable about, and relying upon, the prison-mailbox rule to timely file, this suggests that he was aware of the limitations period and related filing requirements. The events underlying this

---

[3]The Court notes that additional time likely ran off the limitations clock between when Plaintiff learned that his misconduct charge had been dismissed on appeal and when he stopped the clock by filing a grievance.

16

suit arose over five years before Plaintiff filed his Complaint. Equitable tolling is rare, and the burden is upon Plaintiff to establish that equity weighs in his favor. He has not done so in this case.

## III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Defendants' Motions for Summary Judgment (Dkts. 10, 16, 24) be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE. *See Hix v. Tenn. Dept. of Corrs.*, 196 F. App'x 350, 354 (6th Cir. 2006) ("[28 U.S.C.] § 1915(e)(2) mandates that a complaint filed by a prisoner proceeding *in forma pauperis* be dismissed with prejudice if it is frivolous or fails to state a claim. . . . When a district court determines that a complaint . . . fails to state a claim, the court lacks discretion under the PLRA to permit the plaintiff to file an amended complaint."); *Day v. E.I. Du Pont de Nemours and Co.*, 165 F.3d 27 (table), 1998 WL 669939, at *2 (6th Cir. 1998) ("Where a particular claim is barred by the applicable statute of limitations, it does not present an arguable or rational basis in law or fact and therefore may be dismissed as frivolous under § 1915(e)(2)(B)."); *Thompson v. Koneny*, No. 04-40257, 2005 WL 1378832, at *3 (E.D. Mich. May 4, 2005) (report and recommendation) ("Plaintiff's claim is subject to dismissal with prejudice for his failure to file the present action within three years of the alleged violation.").[4]

---

[4]Plaintiff has entitled his opposition to Defendants' first Motion for Summary Judgment (Dkt. 10) as "Motion for Summary Judgment in Opposition to Defendant's Motion for Summary Judgment." (Dkt. 12; *see also* Dkt. 22.) However, in reading his "motion," it appears that Plaintiff has merely filed a response brief to Defendants' Motion. In fact, at the end of his brief, Plaintiff asks the Court to find that Plaintiff has submitted sufficient evidence to defeat Defendants' Motion and to "allow this matter to proceed to trial before a jury." (Dkt. 12, Pl.'s Resp. to Defs.' Mot. Summ. J. at 16.) Accordingly, the Court recommends finding that Plaintiff has not filed a motion for summary judgment, and, if construed to the contrary, Plaintiff's "motion" be denied as moot for the foregoing reasons.

**IV. FILING OBJECTIONS TO THIS REPORT**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES MAGISTRATE JUDGE

Dated: May 10, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 10, 2011.

s/J. Johnson  
Deputy Clerk